Mr. Willis. May it please the court, good morning your honors. Assistant Attorney General Grant Willis and Assistant Attorney General Chris Walters on behalf of the Appellant Warden Tim Hooper. The district court committed several errors in this case and this court must reverse the decision. First, the district court did not even identify the correct controlling statute. Mr. Galbraith's habeas claim is governed by 28 U.S.C. section 2254 of AEDPA and not section 2241 because Mr. Galbraith is being held post-conviction pursuant to a valid state court judgment. Second, the district court made a fundamental error by waiving or excusing Mr. Galbraith's failure to satisfy procedural requirements of exhaustion and timeliness. And third would be that the court erred in addressing a liberty interest in actually finding that Mr. Galbraith did have a liberty interest being released on parole after he was granted parole but before he was released. So first, the district court misconstrued Galbraith's habeas petition as being filed under section 2241. While this court has not previously addressed this exact issue of whether an offender who is seeking parole and files a habeas claim in federal court is addressed by 2241 or 2254, the other courts that have addressed it including the 2nd, 3rd, 6th, 7th, 8th, 9th, and 11th have all held that it should be governed by 2254. And the reasoning is consistent with the structure and purpose of AEDPA and statutory construction. Specifically, 2241 provides for the general authority for habeas writ and here the 2254 includes some limitations and restrictions that were granted and it applies as the individual's legal position is post-trial and he is being held pursuant to a valid state court judgment. Given that there was this mistake or this error made in the district court, it would not be surprising to see that there were other mistakes that tend to follow which would be, secondly, that Galbraith's failure to satisfy AEDPA's procedural requirements of exhaustion and timeliness. First exhaustion, 2254 prohibits a prisoner from raising any claim in federal court unless it was first exhausted and state court remedies were exhausted. The exhaustion requires the offender to exhaust state court remedies by any available procedure in state court. Here, Mr. Galbraith did have that option to exhaust via a state court habeas petition, Article 351 of the Louisiana Code of Criminal Procedure. There was no habeas petition filed. There was no state court remedies sought to be exhausted by Mr. Galbraith. Nothing was filed in the state court. It went immediately to the federal court. There was a 1983 action filed and then after that there was the federal habeas petition filed. There is, of course, an exception and extraordinary circumstances where exhaustion would be wholly inappropriate or futile. Here, the district court conflated the chance that Mr. Galbraith would be unsuccessful with not having a remedy available to him at all. There was a remedy available to Mr. Galbraith. This could be shown by . . . there's a recent case, Snead v. Hooper, 328 Southern 3rd, 1165 of the Louisiana Supreme Court. The facts were extremely similar. There was a rescission of a grant . . . Counsel, what your friend on the other side, no doubt, will point out to us, in Snead, the rescission occurred after the parole was supposed to begin. It seems like the statute specifically addresses that scenario but not the one that we have in front of us. What Well, I would say that that was in dispute by the state. There had, in Snead, the Supreme Court found that he had been held past his release date. However . . . In regards to the facts of that case, isn't that what the statute is dealing with, though? Is the statute, the Article 351? The one that was used in Snead. The one that was used . . . it would still be available to Mr. Galbraith, regardless of whether it was . . . the Louisiana Supreme Court found that he should have had a revocation hearing and, in this case, there would be no need for a revocation hearing in that his parole was rescinded prior to his release. Snead was the same. He had not had, not received a certificate of parole. He had not finished and completed all the requirements that he would need to complete prior to being released, such as housing and other options. But the main fact, Your Honor, I would point you to is that that avenue would still be available to Mr. Galbraith as it was to Mr. Snead. He could still file a state habeas petition in state court and proceed through the different levels of state court and exhaust his remedies, and that did not occur here. Second, there is the fact that without exhaustion, there is a problem with the re-litigation bar under AEDPA. The state courts, in this case, have not had a chance to address the issues, and so that's also a problem. Next is timeliness. I would point you to Section 2254. It allows for a one-year limitation period for filing, which starts from the date of the decision or the date that Mr. Galbraith should have learned of the decision. The tolling period is one year, and Mr. Galbraith learned of the claim around May 1st of 2017. He was sent a letter from the Committee on Parole explaining the rescission and setting him for a second parole hearing. This case, the case was not filed until March 27th of 2019, almost one year after the time, the one-year deadline for filing his petition under 2254. Again, there were no state court filings made during this time period which could have tolled that time. The magistrate judge did find that the Galbraith 1983 suit should have essentially tolled the time limitation. However, there is no case that we can find or that the district court cited that would allow an improperly filed 1983 suit or a federal habeas suit, for that matter, to toll the time limitations under 2244. I would point your honors to Duncan v. Walker, United States Supreme Court case 533 U.S. 167, the Galbraith habeas suit. This petition is not only unexhausted, but it is also untimely. For those reasons, we would ask your honors to dismiss this suit with prejudice. If this court does decide to proceed to the merits, which again, Warden Hooper believes is not necessary, wouldn't be proper in this situation, the district court did err in finding that Mr. Galbraith had a, that he had a, that his, that he had a liberty interest in being released on parole, even though his parole release date had not come to, had not passed yet and that it was rescinded prior to that release date. I would point your honors to Jago v. Van Curen, which essentially said a prisoner has no protected liberty interest in parole until the prisoner is actually released on parole, even where an initial decision to grant parole is made and later rescinded. Louisiana courts have, have been clear on this as well, that Louisiana parole statute should not create an expectancy of release or a liberty interest in general. The committee has full discretion when passing on applications for early release. Louisiana revised statute 15574.11 states that parole is an administrative device in the granting, conditions, or revocation of parole rest in the discretion of the committee on parole. Well, what about the, I don't know if you conceded or not, that's an awful word to use in front of a lawyer in a case. I don't know if you acknowledge it or not, but it does seem to me that your friend on the other side has a point that the bases at the time for rescinding parole, the two bases available for rescinding were not available and rescission occurred without either one of those being present. So it's, the liberty interest is, is part of an argument about due process. It does have to be a liberty interest, but there also is a process that the state has provided for rescinding parole. And it doesn't, it doesn't seem to me that it was properly applied. What about that? Well, yes, Your Honor. I, I would say a couple of things. I would say first that the, the, the policies, they, they weren't state statutes, they were policies and, and guidelines adopted by the Committee on Parole mentioned two avenues, or two reasons why rescission can occur. However, this, those aren't, those aren't applicable here. It, those are, would be the most common reasons that a parole would be rescinded. For instance, in Sneed, the parole was rescinded. There was, there was a disciplinary charge that occurred for, in between the grant of two years, to provide some, some extra guidelines for those sort of rescissions. However, those two rescissions that are mentioned in the p.....in the committee policies are not limiting. There's no limiting language in, in the policies or anywhere else in state law that would allow these to be the only. But, but you're doing, you're using the materials and authorities that you have, so I'm not challenging you on it, but is that just your interpretation of it, or is there any kind of case law or other guidance that says you're right, that those at the time were just two identified reasons, but did not limit the parole board? No, Your Honor, there's not, and I think that would be, you know, another reason why the, the state court should have, you know, been given an opportunity to, to, to issue a ruling on this case and consider this, but it, there is no case out there that would state these are the only two reasons or that there are unlimited reasons. However, I think a, a, a reading of the statutes would show that there's, there is no limiting language stating that these are the reasons and only reasons they could be rescinded prior to release, and the . . . How many members are on the parole board? There are seven members on the parole board. Do you need a quorum and a majority vote to grant parole? It, there's, it's usually a three, a three-member panel that would, that would rule and, yeah, a majority, so, so two of the three would be enough. Is it clear one member can rescind parole? Yes, the one member, uh, rescinding parole prior to release date is, can be done by . . . Is it clear that that's proper? I mean, it does the same procedures set out that one member alone can rescind? Yes, there are, there are policies and guidelines issued by the Committee on Parole which state this can be done by a one-member action. I would point you to the Record on Appeal, page 879, which has a, a, a one-member action sheet which, for rescinding parole, it lists, you know, a, a bunch of reasons and the bottom one would say other, any other reason, and allows for, which, which points to the fact that there are many reasons why they can rescind and including other. It's not limiting and it, it is done by one member, uh, a one-member ruling or one-member action. They are then reset for another parole hearing and in this case, Mr. Galbraith, uh, asked to be removed from the second hearing or asked to have the second hearing canceled and so he, he was not, uh, he did not have that second hearing until, I believe it was a, a couple of years later when he asked to then be placed again on the parole docket and he had his, his second hearing which they, which the Committee found that, uh, that he would not be granted parole at that time, um, and so essentially, it, it's Warden Hooper's position that, in our position that the, there is no limiting, uh, language, there is no limiting statute, case law that would, that would limit the Committee from rescinding prior to his release and in, in that instance, there would be no liberty interest that would be gained, uh, by Mr. Galbraith prior to actually him being released. There, there are many other reasons, I mean, just for example, there's a, if, if Mr. Galbraith was required to complete some sort of conditions and, and, and take classes and, and those weren't completed over a certain amount of time, it would be automatically rescinded or statute, state law would, would provide that his, his grant of parole must be rescinded if it hasn't been done and, and completed in eight or nine months, um, and, and so it, it's not uncommon for, for the Board to rescind the parole prior to release and, and that is done on a one-member action and it's because there is no liberty interest under state law, uh, that would, that would provide for any more than that. All right. Thank you, Your Honors. I'll have a seat and save, reserve the rest of the time for my colleague. All right. Thank you, sir. All right. Mr. Trinicosta. Good morning, Your Honors. My name is Nicholas Trinicosta, I represent Samuel Galbraith. May it please the Court. I would like to begin my argument with some of the facts of this case. I will then move on to the legal issues. Why this is properly a 2241 habeas petition? Why Mr. Galbraith is not time barred in filing his habeas petition? Why there is no remedy in Louisiana to exhaust this case? And then the liberty interest that it mentions. Galbraith's certificate of parole was rescinded a couple of days before his release based upon knowingly false reason and one that is not provided in the law. Galbraith did nothing to jeopardize his release. He fulfilled all the requirements of parole and therefore was granted a certificate of parole. Under Louisiana law, parole could only be rescinded if the prisoner violated work release provisions or engaged in other misconduct in the prison. The stated reason for rescission has nothing to do with either ground. The reason was there may have been technical irregularity to victim notice. This is false and the Board knew it was false at the time. Notification was properly provided to the victim's husband and mother. They were both notified on July 7th for the hearing scheduled for October 13th. That hearing was continued. They were then notified on September 28th for the November 3rd hearing. That is the hearing that took place. That is the hearing where Mr. Galbraith was granted parole. Appellant does not contest these facts. Timely notice was given to the victim's mother and husband. This was found by the court below. It has never been disputed. It cannot be disputed because the Board knew it was false when it issued the reason. Their own documents prove so. The proof was in their confidential files. I know you've stated your preferred sequencing through, but whether or not the reason given was a good one or not, do you acknowledge this single member kind of vetoed by the Parole Board is something that's allowed? I mean, we're not going to— It's allowed if he's following, if the single member is following the two reasons allowed for rescission that are found at 504. This is the regulations that guide, that give public notice of what discretion the Board has. The Board doesn't have unlimited discretion in Louisiana, unlike Mississippi, unlike Texas. Here the state-created right binds the Board, and I'll get to that in a second. The 1983 suit was filed. Discovery took place. Over four different dates, Mr. Galbraith received various documents from the Parole Board. First, they were redacted. Actually, the most important information was redacted. We worked that out. We got the information. We took depositions of the Board members. Once we had proof that the victim was notified properly, we filed the habeas petition. 2241 is the proper vehicle for this case. We're not challenging the constitutionality of his conviction or his sentence. The challenge here is that due process violated when one is being held in prison unlawfully due to actions by the governing authority, and here it would be the Parole Board. This court and district courts in Texas, Mississippi, and Louisiana have handled scores of 2241 cases that involved issues regarding parole. 2254 . . . 2241. I apologize. 2254 clearly deals with a person who's in custody pursuant to a valid state court judgment. I mean, that's the language of it. There is no state court judgment here. Well, he was serving a sentence under a valid . . . He wasn't attacking the state court judgment. Well, he was in custody, though, pursuant to a valid state court judgment, was he not? He was in custody, yes, pursuant to a state court judgment. His conviction. In 2241, you have to be in custody. And here, again, 2254 is attacking a conviction and sentence. That's not what we're doing here. And again, Your Honor, this court has dealt with this issue numerous times in a 2241 context. I'm not talking about rescission of parole. In fact, I don't know of any case in Louisiana where there's been a rescission of parole and an attack on that. What's your best case that in a scenario such as here where somebody's in this eve of parole that 2241, as opposed to 2254, was not the statutory vehicle that the court used? What's the most helpful case? This court's case of Pack v. Youssef. Which is it? Pack v. Youssef, 218 Fed 3rd, 448. Pack says that a 2241 petition attacks the manner in which a sentence is carried out or the prison authority's determination of its duration. Whereas, a 2255 petition provides the primary means of collateral attack on a federal sentence. Now, of course, 2254, 2255 basically are the same except one involves federal convictions and the other state convictions. But that's what this court said in Pack. It makes that distinction. Appellant is wrong to say that AEDPA controls this case. When Congress enacted AEDPA, it did not mend or touch 2241. It only provided changes to 2244, 2254, 2255. I'm sure you heard your friend on the other side say there's no Fifth Circuit authority on exactly the right way to proceed and something like that, but then he listed half the circuits at least that have shown. Are you familiar with those cases? I have read those cases. And so, why don't they show the right way to proceed? Why don't they, excuse me? Why aren't they controlling, not controlling, why shouldn't we just adopt what these others Because this circuit is, this circuit's law is controlling in this. Well, right. We need to make the law and decide what it is. What does 2241 stand for? What does that statute help a prisoner? It helps a prisoner to challenge the duration of confinement that is not ordered by a state court, that is ordered by governing authorities. Are you saying that in this close, I thought you'd make some effort to distinguish them. Are you saying these other circuit cases that he was alluding to but didn't name are dealing with scenarios close enough to this and they held 2254 was the right way to proceed? You know, Your Honor, I am just not as well versed in those cases as I should be to answer your question. Fair enough. Fair enough. He didn't identify them, so he . . . No. So, it's hard to, I did read a couple, don't remember the names. This court in Robertson v. United States said 2241 is used to challenge, quote, the manner in which a sentence is executed. That's what we're dealing with here. Mr. Galbraith is not time-barred. That is so because 2241 does not contain a statute of limitations. The ruling below cites many cases where district courts have held or found, rather, that 2241 has no statute of limitations because it is not in the statute. You can't borrow 2244 and lend it to 2241. That's what the cases say. AEDPA, again, did not amend 2241. Support for our argument is found in Caldwell-Martinez v. Caldwell, where this court said that 2241 does not contain the deference provision found in 2254. Why? Because the plain language of 2241 does not have a deference provision. By analogy, because the language in 2241 does not provide a statute of limitations, there is no time limit to filing it. But even if there was a time limit, here Appellant knew we were seeking habeas relief. In matter of fact, in the 1983 action, he prayed for immediate release from custody, even though he could not have been released in the 1983 action. The district court was correct in finding that the 1983 action was a de facto habeas petition based upon this court's ruling in Martinez v. Texas Court of Criminal Appeals, where this court determined that a 1983 action should be construed as a habeas action based upon the relief sought. Even if the time is at issue, if 2244 is at issue, we have met the requirements of 2244 to be I, which states the factual predicate for the claim could not have been discovered previously through the exercise of due diligence. Once we got the evidence, we filed within the one year, complying with 2244 D1D. The parole investigation report under Louisiana law is confidential. It cannot be shared. In the 1983 action, it was shared because it was subpoenaed and requested through documents request. It is that report which showed us clearly that the board gave a false reason for rescinding the certificate of parole. In fact, during that discovery period, we deposed Chairperson Cheryl Renatza twice. The first time we deposed her, we didn't have these unredacted documents. We convened again for a second deposition, and Ms. Renatza revealed that the mother did, in fact, receive timely notice in that deposition. And she stated that the decision to rescind was made after the mother of the victim falsely stated on TV that the notification letter was sent to New York. It wasn't. And Cheryl Renatza knew this. We could not have discovered the truth until unfettered and complete discovery was had in the 1983 action. Now, I suppose, well, let me move on to exhaustion, Your Honor, I see my time is ticking. We have not exhausted, because we are excused from exhaustion, because there is an absence of available state corrective process. Under Louisiana law, Mr. Galbraith was informed that under no uncertain terms could he challenge rescission in court. Fuller v. Rich, this court stated and explained that exhaustion is not required because it is either unavailable or wholly inappropriate or where the attempt would be patently futile course of action. First, 15.574.11 states, no prisoner or parolee shall have a right to appeal from a decision of the board regarding release. That's pretty plain language. You cannot appeal except in cases involving revocation of parole, such as a denial of a revocation hearing. Galbraith filed an administrative remedy shortly after receiving the rescission notice. The administrative remedy was, quote, rejected because, quote, board decisions are discretionary and may not be challenged. Certainly, we show that it would be patently futile to try to file a state habeas because you know what would have happened. The state would have come in saying 15.475.11 says you can't file an appeal. Moreover, we told Galbraith he could not challenge board decisions because they are discretionary. We would have been faced, as Sinclair, one of their favorite cases, was faced with no cause of action. Of course, Sinclair has nothing to do with rescission of parole. Sinclair and Sneed are not cases where you can appeal rescission. They're not helpful to the state. As pointed out in the brief, the cases relied upon by appellant are actually cases where the state appellate courts declined to review. Writ denied is what was the resolution. According to the Louisiana Supreme Court, any language contained in the cases that are not reviewed has no effect. When an appellate court in Louisiana denies a review of a writ application, the case has no precedential value and frankly, no value at all. Why? Because the court determined there would be no review. Any language that may be written has, according to the Louisiana Supreme Court, no effect. Most of the cases cited by the appellant involve challenges for a parole hearing, not challenges after a parole hearing and everyone knows the board has the complete discretion to grant a hearing or not. But the liberty interest here is created because the state regulation 504 gives two reasons for the rescission of parole. You know what it's telling is after Mr. Galbraith filed his actions, a third reason appeared and that says if it is determined that prior to the offender's release there was not proper notification, the board may rescind parole. That was not in effect at the time we're talking about. Madison versus Parker states that a state created right may exist. It's not the same again in Texas and Mississippi. I have run out of time. I apologize to the court. You can finish your sentence. Thank you. The state relies on Jago versus Van Curen. It does not control this case because Van Curen lied at his parole hearing. The parole board granted parole and then determined he lied twice. So his parole was rescinded. Ohio is not Louisiana. Ohio did not have law that says rescission can take place under this circumstance or this circumstance. Ohio's law said the board can do whatever it wants whenever it wants to. All right. Thank you, Your Honor. Thank you, sir. Mr. Walters. Good morning, Your Honors. The first issue that I would like to address that was raised by the appellee is the 2241 versus 2254 debate that he was having. What my co-counsel stated to you earlier is that all of the other circuits that have addressed this matter, 2nd, 3rd, 6th, 7th, 9th, and 11th circuits have all explained it as 2241 is the general writ statute. 2254 is what Congress enacted with AEDPA, which then placed limitations on certain actions and certain individuals. The most important point or circumstance is that 2254 governs individuals in custody pursuant to a state court judgment. It's not dependent upon what type of claim or what type of action the person is bringing. Is he challenging the manner or duration of his sentence? The question is whether or not he's in custody pursuant to a state court judgment. If he is, he's subject to 2254 and the procedural requirements of exhaustion and timeliness. Counsel, it seems to me that most of what you just said, I want to know what's different about it. Most of what you said is well settled in the Fifth Circuit. What is it this list of other circuits have done that we haven't done? Your Honor, I think it's specifically as to parole board type decisions or I guess it would be decisions after the original trial and the original conviction and sentence and then some other action down the road that involves the individual that's in custody pursuant to a state court judgment. With respect to the . . . 2254 challenged to the conviction, challenged to the underlying conviction or the sentence. What we're dealing with here is independent of that, that has been action since the conviction that has been, according to the allegation, improperly imposed by the state. I wonder if these cases you have listed by circuit names, numbers, are parole rescission, parole revocation. I mean, parole rescission, we don't find much law on and I doubt if all those cases have anything to do with that. That's correct. There is not much on parole rescission except for, of course, Jaco, Vivian, and Curran, but that was not regarding 2244. However, the other circuits that we noted did involve parole decisions and whether or not a challenge to that decision, whether that falls under 2254 or 2241. That was the underlying basis of all the circuits is essentially that all petitions, whether they be federal prisoner, state prisoner, pre-conviction, post-conviction, all prisoners, if they're seeking a federal writ, come under 2241. The only question then is whether 2254 applies to the individual that is seeking the writ. And so, if Mr. Galbraith had been pretrial, let's say, and there was no conviction in state court pretrial detainee, but as someone in custody pursuant to a state court judgment, and Mr. Galbraith, if and when he is ever granted parole, will continue under that same custody of a state court judgment until his parole is finished, which would be, I think, sometime in the 2060s. And he will continue to be under that 2254 statute. And with respect to the exhaustion requirement, Your Honors, we would cite to the Sneed v. Hooper case again, and to point out that there is a device for Mr. Galbraith to bring this as shown by Mr. Sneed. He could have brought it in state court, alleging a constitutional violation, allowed the state courts to address the issue before bringing it to federal court as is required under AEDPA. Mr. Galbraith didn't want to do that. He simply brought an improper 1983 action, which he concedes he was seeking release, such that it would have had to have been dismissed or reconstituted as a habeas petition. But for all of these reasons, and for the fact that the parole board has unfettered discretion under state law on all parole board decisions, we would ask that this court reverse the decision of the district court and to dismiss Mr. Galbraith's petition as unexhausted and untimely under AEDPA, or in the alternative, dismiss as without merit. Thank you, Your Honors. All right. Thank you, counsel, both sides. The case will be submitted.   Thank you. Thank you.